**Irene R. WOOSTER, Petitioner and Appellee,**

**v.**

**Grant R. WOOSTER, Respondent and Appellant.**

**No. 15282.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 24, 1986.

Decided Jan. 7, 1987.

---

Debra D. Watson, of Wallahan Law Offices, Rapid City, for petitioner and appellee.

Lawrence R. Bihlmeyer, Rapid City, for respondent and appellant.

FOSHEIM, Retired Justice.

Appellee Irene Wooster (Irene) filed a $4,435 judgment against her ex-husband Grant Wooster (Grant) in South Dakota circuit court under the Uniform Enforcement of Foreign Judgments Act (UEFJA), SDCL ch. 15–16A. The Superior Court of the State of California for the County of Orange issued the judgment. Grant thereafter moved from California to South Dakota. Grant submitted motions for a new trial and to vacate the foreign judgment. He appeals from the denial of these motions. We affirm.

■ A sketchy record makes a satisfactory understanding of the facts in this case difficult. Grant seeks to have our review include copies of documents not in the settled record. We cannot do this as our review is limited to the record and those matters of which judicial notice may be taken. *Corn Exchange Bank v. TriState Livestock,* 368 N.W.2d 596 (S.D.1985); *Scott v. Rooney,* 65 S.D. 510, 275 N.W. 349 (1937). *See* SDCL 19–10–2; *Matter of L.R.,* 394 N.W.2d 901 (S.D.1986).

The record first contains an order of the Orange County court dated in October of 1982, which is based on a stipulation stating that Grant owed $6,650 in spousal support payments to Irene at that time, including remaining future payments and arrearages. It also provides that if Grant was required through legal process to repay any of a $9,694.07 debt Irene allegedly had incurred, his support obligations would be reduced accordingly. Apparently both parties were concerned that Grant may have been liable for health insurance payments made to Irene and their child after the couple's divorce.

The next California order contained in our record is dated April 8, 1983, and again made pursuant to stipulation. This order required Grant to pay the "total amount of ordered spousal support" in a lump sum only in the event of the occurrence of either (a) Grant's receipt of a lump sum upon reinstatement with his former employer who had discharged him; or (b) Grant's withdrawal from his retirement benefits program with his credit union. This order further states that Grant would pay Irene $100 per month on the $2,215 arrearage if he became employed at a salary in excess of $2,000 per month.

The next California court document in our record is an order and judgment entered in October of 1985. This is the judgment Irene filed in our circuit court. It apparently was entered after a show cause hearing initiated by Irene in which she requested a judgment against Grant for $6,415. In a supporting affidavit, Irene claimed that Grant was not required to pay back any of the over $9,000 allegedly owed to the insurance carrier and therefore was not relieved from any of his monthly $350 spousal support duty under the October 1982 judgment. The affidavit further states that Grant had no retirement benefits program with his union and therefore no benefits to withdraw. It also alleged that Grant wrongfully failed to seek reinstatement with his former employer and had obtained a new position in South Dakota. Grant responded in an affidavit denying these allegations, except the South Dakota employment.

This October 1985 order states:

1. The conditions specified as (a) and (b) in the Order on Order to Show Cause filed April 8, 1983, have not yet occurred and therefore no payment is due on the arrearages fixed at that time as $2,215.00.

2. With respect to the balance of the $6,650.00 in total spousal support ordered [at the October 1982 hearing] this court finds that no payments have been made and there is due and owing to [Irene] the sum of $4,435.00 for spousal support arrearages.

The California court then ordered that judgment be entered accordingly.

Grant relies on SDCL 15–16A–2 from our adoption of the UEFJA which provides in pertinent part:

A copy of any foreign judgment ... may be filed in the office of the clerk of any circuit court of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of the circuit court of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a circuit court of this state and may be enforced or satisfied in like manner.

Grant alleges that the California judgment is subject to collateral attack in this state for various reasons. He claims he in effect satisfied the California judgment by payments he allegedly made to the insurance carrier, and that Irene lied to the California court by denying this occurrence. He claims that Irene committed other "frauds" upon the California court by lying about his efforts to gain reinstatement and the existence of the retirement fund. Grant also alleges the motions should have been granted because the California judgment is "self-contradictory" in that it orders payment of child support arrearages despite finding that the preconditions stated in the April 1983 order had not occurred.

Grant challenged the California judgment by motions made under SDCL 15–6–59(a) and 60(b) from our Rules of Civil Procedure. Rule 59(a) allows the grant of a new trial for irregularity in court proceedings, insufficiency of the evidence to justify the decision, and for other reasons. Rule 60(b) allows relief from a judgment for fraud, misrepresentation, because the judgment has been satisfied, is void and for other reasons.

█ Grant's reliance upon our Rules of Civil Procedure is misplaced. It is settled law "that the power of a state to reopen or vacate a foreign judgment is more limited than under the rules of civil procedure."

*Matson v. Matson*, 333 N.W.2d 862, 867, 31 A.L.R. 4th 696, 704 (Minn.1983). Although a motion to vacate under Rule 60(b) was a correct procedure or defense contemplated by the uniform act, the *grounds* mentioned in Rule 60(b) which allow relief from a judgment are not available to vacate a foreign judgment. *Matson, supra; see Miller v. Eloie Farms, Inc.*, 128 Ariz. 269, 625 P.2d 332 (1980); *Thompson v. Safeway Enterprises, Inc.*, 67 Ill.App.3d 914, 24 Ill.Dec. 561, 385 N.E.2d 702 (1978). Rather, as we stated in *Baldwin v. Heinold Commodities, Inc.*, 363 N.W.2d 191, 194 (S.D.1985):

When a foreign judgment has been appropriately filed the grounds for vacating it are limited to lack of personal or subject matter jurisdiction of the rendering court, fraud in procurement of the judgment, satisfaction, lack of due process, or other grounds that make the judgment invalid or unenforceable; however, the nature, amount, or other merits of the judgment cannot be relitigated in the state in which enforcement is sought. (Citations omitted.)

*See also Luedtke v. Koopsma*, 303 N.W.2d 112 (S.D.1981); *Bahr v. Bahr*, 85 S.D. 240, 180 N.W.2d 465 (1970); *Foss v. Foss*, 83 S.D. 574, 163 N.W.2d 354 (1968); *Nelson v. Nelson*, 71 S.D. 342, 24 N.W.2d 327 (1946); *Matson, supra; Miller, supra; Stevens v. Stevens*, 44 Colo.App. 252, 611 P.2d 590 (1980); *Thompson, supra; Morris Lapidus Associates v. Airportels, Inc.*, 240 Pa. Super. 80, 361 A.2d 660 (1976); *Purser v. Corpus Christi State National Bank*, 256 Ark. 452, 508 S.W.2d 549 (1974). "No defense may be set up which goes to the merits of the original controversy, or which might have been interposed in the original action." *Bahr*, 85 S.D. at 245, 180 N.W.2d at 467.

Foreign judgments are accorded this deference to avoid offending the Full Faith and Credit Clause of the United States Constitution. *See Morris v. Jones*, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488 (1946); *Phares v. Nutter*, 125 Ariz. 291, 609 P.2d 561 (1980); *Stevens, supra; Morris Lapidus, supra; Thompson, supra; Purser,*

*supra.* We also note that prior South Dakota authority has enforced foreign judgments in the interest of interstate comity. *See Application of Heintz,* 78 S.D. 188, 99 N.W.2d 794 (1959); *Application of Habeck,* 75 S.D. 535, 69 N.W.2d 353 (1955); *Sorenson v. Spence,* 65 S.D. 134, 272 N.W. 179 (1937).

The "fraud" which Grant alleges is not of the type referred to in *Baldwin.* Fraud in procuring a judgment is distinct from fraud occurring between the parties to a judgment. *Baldwin,* at 193 (citing *Gifford v. Bowling,* 86 S.D. 615, 200 N.W.2d 379 (1972)). In *Gifford,* we explained that " 'courts have found fraud upon the court only where there has been the most egregious conduct involving a corruption of the judicial process itself.' " 200 N.W.2d at 384 (quoting *Lockwood v. Bowles,* 46 F.R.D. 625 (D.C.1969)). The "fraud" Grant alleges is his wife's claimed misrepresentations; not fraud in the procurement of a judgment.

Nor can Grant establish the judgment he seeks relief from was satisfied prior to its filing in South Dakota. The only evidence in the record regarding satisfaction of the judgment is Grant's affidavit stating he paid the insurance carrier. This is contradicted by Irene's affidavit. The record is devoid of any document indicating the judgment was satisfied. Accordingly, no trial court abuse of discretion occurred in denying the motion to vacate.

Regarding Grant's motion for a new trial, we note the *Baldwin* decision expressly refers only to motions to vacate a foreign judgment. However, the reasoning requiring a strict rule in relation to motions to vacate applies likewise to Grant's motion for a new trial, which was simply another method of collaterally attacking the California judgment. Therefore no trial court error occurred in denying this motion, even assuming it was a permissible means of attacking the judgment.

We now turn to Grant's argument that the trial court should have granted his motions on the basis of "contradiction"

within the judgment itself. Even if we indulged Grant in his claim that this judgment is somehow irregular, we still could not reverse. A foreign judgment shall be enforced to its full extent regardless of any errors or irregularities it may contain. *Matson, supra;* 47 Am.Jur.2d *Judgments* § 1238 (1969). *See Fauntleroy v. Lum,* 210 U.S. 230, 28 S.Ct. 641, 52 L.Ed. 1039 (1908).

Grant alleges other grounds upon which to vacate the California judgment. They also are without merit because they contravene the res judicata effect accorded foreign judgments by the Full Faith and Credit Clause and by the UEFJA.

We do not in this opinion rule on the ability of courts in this state to modify, as opposed to vacate, a foreign judgment. *See Barber v. Barber,* 323 U.S. 77, 65 S.Ct. 137, 89 L.Ed. 82 (1944); *Loree v. Pearson,* 88 S.D. 330, 219 N.W.2d 615 (1974).

Affirmed.

All the Justices concur.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.