Dorothy MATSON, Respondent,

v.

Charles D. MATSON, Appellant.

No. C3-82-787.

Supreme Court of Minnesota.

May 6, 1983.

Dale G. Swanson, Forest Lake, for appellant.

Fetzner & Porter and Gloria O'Connell Sonnen, Hudson, Wis., for respondent.

KELLEY, Justice.

Appellant, Charles D. Matson, appeals from an order of the Washington County District Court refusing to vacate a Wisconsin default judgment that reduced to a money judgment his child support and alimony arrearages under a 1961 Wisconsin divorce decree, which was filed in Minnesota in 1980 pursuant to the Uniform Enforcement of Foreign Judgments Act, Minn. Stat. §§ 548.26–.33 (1982), (UEFJA). Appellant also sought modification of the 1980 Minnesota judgment on the grounds that a Minnesota court had modified the original Wisconsin divorce decree in a Minnesota Uniform Reciprocal Enforcement of Support Act (URESA) proceeding instituted by respondent. The trial court granted motions to modify to the extent of recomputing the amount owed. We affirm the order refusing to vacate but reverse the order modifying the judgment.

Appellant contends that the 1980 Wisconsin money judgment, later docketed in Minnesota, should be vacated because the Wisconsin court did not have statutory subject matter jurisdiction; that the amount of the judgment should be reduced in conformance with the alleged 1968 Minnesota modification in the URESA action; and that the judgment should be reduced to exclude those amounts for support and alimony which accrued more than 10 years prior to the commencement of the UEFJA action in Minnesota. Respondent, in addition to controverting those contentions, claims the trial court erred in opening the Wisconsin judgment and modifying it by reducing the amount owed.

The facts of this case can be found in *Matson v. Matson,* 310 N.W.2d 502 (Minn. 1981). In that case, we found that the Wisconsin money judgment for support and alimony arrearages was a foreign judgment within the meaning of UEFJA, and that the Wisconsin court possessed both subject matter jurisdiction and personal jurisdiction over appellant to enter the 1980 judgment. *Id.* at 506–07. We remanded the case to allow appellant to assert other grounds for reopening or vacating the Wisconsin judgment.

On December 12, 1981, after this court's previous decision that ordered a remand, appellant filed a motion in Washington County District Court that asserted several grounds for relief from the 1980 Wisconsin judgment. First, appellant requested that he be allowed to open the 1980 Wisconsin judgment and contest the amount and enforcement of alleged support and alimony arrearages on the grounds that (1) failure to contest in Wisconsin, on advice of counsel, was justifiable mistake, inadvertence and neglect since the questions of personal and subject matter jurisdiction were of first impression; and (2) there were irregularities in the Wisconsin findings on the amount of alleged arrearages due since they are inconsistent with the findings of the Washington County District Court on May 13, 1975, and the Milwaukee County Circuit Court on November 23, 1976, therefore an evidentiary hearing on the amount owed was necessary.

Second, appellant maintained that his support obligations had been modified by the Washington County District Court in an enforcement of support proceeding and requested that the 1980 Wisconsin judgment be modified accordingly.

Third, appellant maintained that two Minnesota limitation of actions provisions precluded recovery of any support and alimony obligations that came due more than 10 years before respondent's commencement of this action.

On April 29, 1982, the Washington County District Court issued an order in which it denied appellant's motion to vacate the Wisconsin judgment, granted the motion to open the Wisconsin judgment to the extent the court had reviewed the file and determined the amount of support arrearages due and owing and granted the motion to modify the judgment from $48,682 to $34,380.

1. Were appellant's support obligations imposed by the 1961 Wisconsin divorce decree modified by the Washington County District Court in the 1968 URESA proceeding? We stated in our prior decision that

the 1980 Wisconsin judgment was based on a divorce "decree that has not been modified since its issuance." *Matson,* 310 N.W.2d at 504. The trial court, in a memorandum incorporated in a September 23, 1980 order, stated that the original judgment of divorce "has not been modified or altered." Appellant maintains, however, that the 1968 Minnesota URESA proceeding constituted a modification of the 1961 Wisconsin divorce decree which was binding on the Wisconsin court that entered the 1980 money judgment.

The 1961 Wisconsin divorce decree ordered the appellant to pay $60 a week for support of his three unemancipated children and $10 a week for alimony. In 1968, respondent brought an action against appellant in Minnesota under URESA to obtain enforcement of appellant's support obligation. In that proceeding, neither party petitioned for revision or alteration of the 1961 Wisconsin divorce decree. Following a hearing, the court ordered appellant to pay respondent $15 per week per child. Since appellant contends that this order constituted a "modification" of the original divorce decree, we examine the law.

■ Assuming that in 1968 the Minnesota court had the authority to modify a foreign support judgment in a URESA proceeding,[1] Minn.Stat. § 518.18 (1967) clearly required a "petition" by one of the parents to modify support obligations. Since there was no petition by appellant in 1968 for such modification, the Minnesota court's 1968 URESA order which reduced appellant's support obligation did not constitute a "modification" binding upon the courts of this state or Wisconsin.

2. We next consider appellant's contention that the Wisconsin court did not have statutory subject matter jurisdiction to enter the 1980 money judgment sought now to be enforced in Minnesota. We conclude that appellant's contention is without merit.

■ Wisconsin common law has long recognized a support obligee's right to have support arrearages reduced to a money judgment after all of the children have reached the age of majority. *See Braun v. Brown,* 1 Wis.2d 481, 484, 85 N.W.2d 392, 394 (1957); *Halmu v. Halmu,* 247 Wis. 124, 19 N.W.2d 317 (1945). In 1977, the Wisconsin legislature amended the provision for enforcement of support and alimony obligations so as to allow for money judgments for past-due payments, even though the children were minors. *See* 1977 Wis.Laws, ch. 105, § 46 (codified at Wis.Stat. § 767.30 (1979–80)). The effective date provision stated that the amendment applied "to all *actions affecting marriage* and to all *actions* for modification or enforcement of previously entered orders in actions affecting marriage, which are commenced on and after" February 1, 1978. 1977 Wis.Laws, ch. 105, § 62(1) (emphasis added).

Appellant's contention that "actions" in the second clause of section 62(1) requires independent jurisdictional contacts which are admittedly absent in the present case is rejected.[2] This court previously indicated

---

1. Minn.Stat. § 518.18 (1967) provided:
   The court may afterward, from time to time, on the petition of either parent, revise and alter such order concerning the care, custody, and maintenance of the children, or any of them, and make such new order concerning them, as the circumstances of the parents and the benefit of the children shall require.

2. Appellant also contends that the Wisconsin Circuit Court lacked statutory subject matter jurisdiction because the definition of "actions affecting marriage" as provided in the first clause of 1977 Wis.Laws, ch. 105, § 62(1) did not include "enforcement" of a support judgment when the 1980 Wisconsin judgment was entered.

In 1977 and at the time the 1980 Wisconsin judgment was entered, actions affecting marriage were " * * * (f) For child support. (g) For maintenance payments. * * * (i) To modify a judgment in an action affecting marriage granted in this state or elsewhere. (j) For periodic family support payments." Wis.Stat. § 247.02 (1977) (presently codified at Wis.Stat. § 767.02 (1981)).

In 1979, the Wisconsin legislature amended subsection (i) of the definition to include enforcement, not just modification, of a judgment in an action affecting marriage. 1979 Wis. Laws, ch. 196, § 6. The amendment did not become effective until August 1, 1980, 2½ years after the effective date of the amendment statutorily granting custodial parents with the money judgment remedy and 6 months after

that it equates "actions" in the second clause with all motions and proceedings, including those without independent jurisdictional contacts:

Defendant is actually arguing that the circuit court exceeded its authority once it exercised subject matter jurisdiction. Although this argument goes beyond the jurisdictional issues before this court on appeal, we note in passing that the amendment authorizing money judgments for past due support installments was effective for all *proceedings* commenced after February 1, 1978. Act of Oct. 21, c. 105, § 62, 1977 Wis.Laws 560, 579.

*Matson*, 310 N.W.2d at 506 n. 6 (emphasis added). Respondent's motion to reduce to a money judgment support and alimony arrearages is an "action" within the meaning of section 62(1), therefore, the Wisconsin Circuit Court had statutory subject matter jurisdiction to enter the money judgment.

3. Appellant next contends that Minn. Stat. §§ 541.04 and 550.01 (1982), the Minnesota 10-year limitation of actions statutes, preclude enforcement of the 1980 Wisconsin judgment to the extent that that judgment includes support and alimony accruing more than 10 years before respondent commenced the present action for enforcement.

■ Minnesota requires that enforcement of a foreign judgment be sought within 10 years of its entry. Minn.Stat. §§ 541.04 and 550.01 (1982). The limitation of actions provisions are applied to periodic support installments so that each installment is "treated independently and separately and recovery allowed only for those payments which accrue within 10 years from the date of the commencement of the action." *Dent v. Casaga*, 296 Minn. 292,

297, 208 N.W.2d 734, 737 (1973). The question presented by this case is whether the 1980 money judgment should be the event triggering the limitation of actions or whether respondent should be limited to recovery of the support payments that accrued within 10 years of the commencement of this action.

■ Although Minnesota law does not provide for a similar procedure for reduction of support arrearages into a money judgment, the Full Faith and Credit Clause requires that courts of this state recognize and enforce judgments of other states even though they could not be obtained under Minnesota law. *See Morris v. Jones*, 329 U.S. 545, 551, 67 S.Ct. 451, 455, 91 L.Ed. 488 (1946). In *Matson*, 310 N.W.2d at 505, this court found that the 1980 money judgment constituted a final foreign judgment and appellant filed the 1980 money judgment, not the 1961 divorce decree, for enforcement in Minnesota. Moreover, in *Matson*, 310 N.W.2d at 505, this court determined that the 1980 Wisconsin judgment constitutes a foreign judgment within the meaning of Minn.Stat. § 548.26 (1982) which brings it within the language of section 541.04, which provides:

No action shall be maintained upon a *judgment* or decree of a court of the United States, or of any state or territory thereof, unless begun within ten years after the entry of such judgment. (emphasis added)

■ The statutory language and our previous determination that the 1980 Wisconsin proceeding resulted in a "judgment" clearly establish that respondent is not limited to recovery of the support arrearages that accrued within the 10 years preceding commencement of this action, but is enti-

---

the 1980 Wisconsin judgment in dispute in this case.

Appellant contends that the statutory money judgment remedy was not available to respondent at the time the 1980 Wisconsin judgment was issued because the amendment that included "enforcement" of support judgments in the definition of actions affecting marriages had not yet been enacted and that the legislature intended some new consequence by its inclu-

sion. The practical impact of appellant's interpretation would be to prohibit the use of the statutory money judgment remedy in all cases brought within a 2½-year period of time when the support obligations arose prior to August 1, 1980, which would be the vast majority of support obligations since it would have been an action for enforcement, which was not specifically listed in the statutory definition of actions affecting marriage.

tled to the full amount of the Wisconsin money judgment and had until 1990 to institute an action in this state for enforcement.

4. Finally, respondent on petition for review maintains that the trial court was prohibited by the Uniform Enforcement of Foreign Judgments Act, Minn.Stat. §§ 548.26–.33 (1982), and the Full Faith and Credit Clause, U.S. Const. art. IV, § 1, from reducing the amount of the 1980 Wisconsin judgment sought to be enforced in Minnesota from $48,682 to $34,380.

■ Article IV, section 1 of the United States Constitution, the "Full Faith and Credit Clause," provides:

> Full Faith and Credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof.

As stated in *Durfee v. Duke,* 375 U.S. 106, 109, 84 S.Ct. 242, 244, 11 L.Ed.2d 186 (1963):

> The constitutional command of full faith and credit, as implemented by Congress, requires that "judicial proceedings * * * shall have the same full faith and credit in every court within the United States * * * as they have by law or usage in the courts of such state * * * from which they are taken." Full faith and credit thus generally requires every State to give a judgment at least the *res judicata* effect which the judgment would be accorded in the State which rendered it.

*See also Morris v. Jones,* 329 U.S. 545, 553, 67 S.Ct. 451, 457, 91 L.Ed. 488 (1946). Minnesota has adopted a modified version of UEFJA. *See* Minn.Stat. §§ 548.26–.33 (1982). The purpose of the Act is to implement the Full Faith and Credit Clause, U.S. Const. art. IV, § 1, and to facilitate interstate enforcements of judgments by providing a summary procedure by which a judgment creditor may enforce the judgment in an expeditious manner in any jurisdiction in which the judgment debtor is found. *See, e.g., Thompson v. Safeway Enterprises,*

*Inc.,* 67 Ill.App.3d 914, 24 Ill.Dec. 561, 385 N.E.2d 702 (1978). The Full Faith and Credit Clause and UEFJA apply even though the judgment was a default judgment such as the Wisconsin 1980 judgment here involved. *See Morris v. Jones,* 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488 (1946); *O'Reilly Motor Co. v. Uecker,* 309 Minn. 278, 244 N.W.2d 49 (1976).

■ Minn.Stat. § 548.27 (1982) provides:

> A copy of any foreign judgment authenticated in accordance with the act of Congress or the statutes of this state may be filed in the office of the clerk of any district court of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of any district court or the supreme court of this state. *A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a district court or the supreme court of this state, and may be enforced or satisfied in like manner.* (emphasis added)

Appellant is under the misconception that the above-emphasized language allows the courts of this state to apply Minn.R.Civ.P. 60.02 to foreign judgments in the same manner it is applied to judgments of the courts of this state. It has been settled by the United States Supreme Court and courts of other states that the power of a state to reopen or vacate a foreign judgment is more limited than under the rules of civil procedure and that a foreign judgment cannot be collaterally attacked on the merits. After a foreign judgment has been duly filed, the grounds for reopening or vacating it are limited to lack of personal or subject matter jurisdiction of the rendering court, fraud in procurement (extrinsic), satisfaction, lack of due process, or other grounds that make a judgment invalid or unenforceable. The nature and amount or other aspects of the merits (i.e., defenses) of a foreign judgment cannot be relitigated in the state in which enforcement is sought.

See Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488 (1946).[3]

 It is also established that the existence of an error or irregularity in the law or facts of the foreign judgment, in the absence of one of the above grounds for reopening or vacating a foreign judgment, does not constitute grounds on which a court of the enforcing state may reopen and modify the foreign judgment. Assuming the necessary procedures are complied with, a foreign judgment must be enforced to its full extent, including any errors or irregularities contained therein. *See, e.g., Fauntleroy v. Lum,* 210 U.S. 230, 28 S.Ct. 641, 52 L.Ed. 1039 (1908); *Springfield Credit Union v. Johnson,* 123 Ariz. 319, 324, 599 P.2d 772, 777 (1979); *Thompson v. Safeway Enterprises, Inc.,* 67 Ill.App.3d 914, 916, 24 Ill. Dec. 561, 565, 385 N.E.2d 702, 706 (1978); *O'Reilly Motor Co. v. Uecker,* 309 Minn. 278, 280, 244 N.W.2d 49, 51 (1976). Even if the Wisconsin court incorrectly determined appellant was obligated under the 1961 divorce decree to pay $60 per week for child support until the youngest child became emancipated, rather than $20 per week per child, the Minnesota court was constitutionally and statutorily precluded from reopening the 1980 Wisconsin judgment. Because the trial court concluded the Wisconsin court was in error, it modified the Wisconsin 1980 judgment by making the reduction. It follows, therefore, that the Wisconsin 1980 money judgment for $48,682 must be reinstated.

Affirmed in part, reversed in part and remanded for entry of judgment in favor of respondent for $48,682.

---

**3.** *See also Jones v. Roach,* 118 Ariz. 146, 575 P.2d 345 (1977); *Purser v. Corpus Christi State National Bank,* 256 Ark. 452, 508 S.W.2d 549 (1974); *Stevens v. Stevens,* 44 Colo.App. 252, 611 P.2d 590 (1980); *Thompson v. Safeway Enterprises, Inc.,* 67 Ill.App.3d 914, 24 Ill.Dec. 561, 385 N.E.2d 702 (1978); *Matson v. Matson,* 310 N.W.2d 502 (Minn.1981); *Gibson v. Epps,* 352 S.W.2d 45 (Mo.Ct.App.1961); *Morris Lapidus Associates v. Airportels, Inc.,* 240 Pa.Super. 80, 361 A.2d 660 (1976); *Copeland Planned Futures, Inc. v. Obenchain,* 9 Wash.App. 32, 510 P.2d 654 (1973).